**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

SUCCESS SUMMIT, LLC, a Colorado Limited
Liability Company,

        Plaintiff,

  v.

STEPHEN H. DINAN, an individual; and THE
SHIFT NETWORK, INC., a Delaware corporation,

        Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Success Summit, LLC, for its complaint against Defendants Stephen H. Dinan ("Dinan"), and The Shift Network, Inc. ("The Shift Network") (collectively, "Defendants"), states the following:

**SUMMARY OF THE CASE**

1.    Success Summit, LLC ("Success Summit"), is a Colorado company that hosts large-scale events and creates educational products to encourage and develop socially-conscious business and lifestyle practices based on principles of innovation, social responsibility, sustainability, and prosperity. At Success Summit's first major event, the Success 3.0 Summit, held in Boulder, Colorado, during the fall of 2014, Success Summit brought together dozens of the world's business, social, and thought leaders for a multi-day summit to discuss conscious business

practices, investing, and success. Key participants at the event included John Mackey (Co-Founder and co-CEO, Whole Foods Market), Arianna Huffington (Founder of the Huffington Post), Blake Mycoskie (Founder of TOMS Shoes), Alanis Morissette (Grammy-winning Recording Artist), Tony Hsieh (Founder and CEO of Zappos), Luke Nosek (Co-Founder of Paypal), and many others.

2. In connection with the fall 2014 summit, Success Summit engaged a production company to film interviews with key speakers and create a feature-length documentary about Success Summit's mission. After the fall 2014 summit, Success Summit continued its work, interviewing additional social, thought, and other leaders such as Tony Robbins (author and speaker), Dwight Howard (NBA All-Star), Casey Simpson (actor), Moby (musician) and many others. Success Summit's film, entitled "RiseUP," was scheduled for release in late 2016.

3. Defendant Dinan, along with his company The Shift Network, is a direct competitor of Success Summit. Following the Success 3.0 Summit, which Defendant Dinan attended as a participant, Defendants began a deliberate, unlawful campaign to damage the reputation and business of Success Summit and to prevent the release of its RiseUP film. Defendants have issued false and defamatory statements about Success Summit and RiseUP, contacted numerous third parties with whom Success Summit worked to threaten and intimidate them, and conspired with various third parties to engage in similar tortious misconduct. Defendants' misconduct has caused a number of Success Summit's contributors and interviewees to withdraw from participation with the RiseUP film, forced Success Summit to cancel a planned RiseUP event, and resulted in significant damage to Success Summit, its business, and the RiseUP film.

## PARTIES, JURISDICTION AND VENUE

4. Success Summit is a Colorado Limited Liability Company with its principal place of business located in Boulder, Colorado.

5. Upon information and belief, Dinan is a California resident and the founder and CEO of The Shift Network.

6. Upon information and belief, The Shift Network is a Delaware corporation with its principal place of business located in the State of California.

7. Upon information and belief, The Shift Network is, and at all relevant times has been, the alter ego of Dinan because, among other things: (a) The Shift Network was and is a mere sham or shell; (b) there existed and continues to exist a unity of interest and ownership between Dinan, on the one hand, and The Shift Network, on the other hand, such that any separateness has ceased to exist; (c) Dinan at all times has controlled, dominated, managed, and operated The Shift Network to the point that any separateness between them never existed and/or has ceased to exist; and (d) the failure to deem Dinan to be the alter ego of The Shift Network would be inequitable and would work a fraud and injustice such that Dinan should be treated as the alter ego of The Shift Network.

8. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

9. This Court has personal jurisdiction over the named Defendants because they have minimum contacts with the State of Colorado and because Defendants have committed tortious acts in and committed tortious acts outside this state that proximately caused injury and damage in this judicial district.

10.     Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) as a substantial part of the events or omissions giving rise to the claims occurred here.

### GENERAL ALLEGATIONS

11.     Success Summit was originally formed in early 2014 to produce the Success 3.0 Summit, which was held October 29-November 2, 2014, in Boulder, Colorado.

12.     Success Summit's business model is to promote a vision of socially-conscious business and lifestyle practices through, among other avenues, published articles and writings, online courses, online educational summits, and future in-person summits and other events.

13.     Success Summit has further undertaken significant work on its feature-length documentary film, RiseUP.  Success Summit owns and controls all rights, title, and interest in its RiseUP materials, including all rights, title and interest in the RiseUP film.

14.     Beginning in early 2014, Success Summit worked with the Center for Integral Wisdom and Marc Gafni, a prominent author and thought leader, both of whom helped to organize the Success 3.0 Summit and establish relationships with potential speakers for the event.

15.     The Success 3.0 Summit ultimately included all of the speakers listed above, as well as other nationally- and internationally-recognized business, social and thought leaders.  Mr. Gafni was an emcee at the summit.

16.     During the fall 2014 Summit, Storyworks, a film production company, began work on RiseUP, Success Summit's documentary film.  Filmmakers recorded portions of the Success 3.0 Summit and interviewed key participants as provided by agreement with the participants.

17.     Following the fall 2014 Summit, Success Summit continued work on the RiseUP

documentary, securing and filming additional interviews with other well-known leaders and innovators including Tony Robbins (Author & Speaker), Dwight Howard (NBA All-Star), Casey Simpson (Actor), Marie Forleo (Author & Entrepreneur), Moby (Musician) and many others, editing the RiseUP film, and otherwise producing the RiseUP film for distribution.

18. Defendants Dinan and The Shift Network are direct competitors of Success Summit. According to its website, The Shift Network "empowers a growing global movement of people who are creating an evolutionary shift of consciousness that in turn leads to a more enlightened society, one built on principles of sustainability, peace, health, and prosperity." The website invites others to "join us as we create events, programs, and activities that help us evolve[.]"

19. Defendants regularly market and sell their courses, books and other products to consumers in Colorado. Among other things, Dinan has promoted Defendants' book at appearances in Colorado bookstores, where he discusses Defendants' books and mission.

20. Although formally a competitor of Success Summit, Defendant Dinan also paid to attend Success Summit's fall 2014 Summit in Boulder, Colorado, and even submitted his photograph and biography for inclusion in the list of Distinguished Attendees on the Success 3.0 Summit website.

21. At the Success 3.0 Summit, Defendant Dinan had access to and received further information about Success Summit's mission and plans, including its development of the RiseUP film, as well as the momentum generated by the Summit.

22. Following the Success 3.0 Summit, Defendants began using unlawful and

improper means to deter third parties from continuing to participate in Success Summit's work, including its RiseUP film.

23. Among other things, in or about October 2015, Defendants Dinan and The Shift Network insisted that Barbara Marx Hubbard, who was a speaker at the Success 3.0 Summit event and a key participant in the RiseUP film, but who also had longtime connections to The Shift Network, cease all work with Success Summit, the RiseUP film and other organizations. When Ms. Hubbard did not accede to Defendants' demands, Defendant Dinan told her that she was barred from working with The Shift Network and, moreover, that he would personally "destroy" the other projects on which she worked, such as those with Success Summit and its RiseUP film.

24. Upon information and belief, Defendants also approached other third parties and made similar threats to them.

25. By the end of 2015, as Success Summit and its RiseUP film gained further momentum, Defendants increased their efforts to damage the reputation and business of Success Summit and the reputations of those with whom it had collaborated.

26. Defendants began by attacking Mr. Gafni, one of the film's producers, by making statements regarding matters unrelated to Success Summit or its RiseUP film. On or prior to December 25, 2015, Defendants Dinan and The Shift Network provided information to and instigated an article on Mr. Gafni. That article, "A Spiritual Leader Gains Stature, Trailed by a Troubled Past[,]" was published by the New York Times on December 25, 2015.

27. On December 29, 2015, a second article, by the same reporter, was published in the Tablet magazine, and further linked Mr. Gafni to the RiseUP film.

28.     After the article was published in late December, Mr. Gafni ceased all participation in and association with the RiseUP film, and Success Summit removed all references to Mr. Gafni from the RiseUP internet pages, social media, and the trailer for the film. Effective January 1, 2016, Mr. Gafni also severed remaining business ties with Success Summit.

29.     By late December 2015 or early 2016, Defendants knew or should have known that Mr. Gafni had no ongoing participation in and association with the RiseUP film.

30.     Nonetheless, upon information and belief, starting after December 2015, Defendants Dinan and The Shift Network also conspired with and/or instructed other individuals, including Nancy Levine, to communicate, email and/or send messages on social media attacking Mr. Gafni and all projects with which Mr. Gafni had been associated, which would include Success Summit and the RiseUP film. These emails and messages were sent to contributors and interviewees of the RiseUP film and their business and social associates.

31.     Defendants and others, including Nancy Levine, also targeted members of the Whole Foods Markets Board of Directors, Conscious Capitalism Board of Directors, Vanguard, and Goldman Sachs, among others, to pressure Mr. Mackey, the Whole Foods Market Co-CEO, to end his involvement with all projects with which Mr. Gafni had been associated, which would again include Success Summit and the RiseUP film.

32.     Throughout the first several months of 2016, Defendants Dinan and The Shift Network, and others acting in concert with them or at their direction, including but not limited to Nancy Levine and/or Ari Stefansson, continued to call, email, send messages on social media, and/or post on social media misleading statements intended to pressure third parties to withdraw

from further participation in the RiseUP film and/or Success Summit's other business ventures.

33. On May 3, 2016, Defendant Dinan published several false and defamatory statements about the RiseUP film and Success Summit on a Huffington Post blog entitled "Why You Should Boycott Marc Gafni's Movie, 'RiseUP.'"

34. In his post, Defendant Dinan falsely claimed there were "deceptions taking place around the movie RiseUP" and falsely claimed that "[i]t appears that the RiseUP production team is now minimizing or hiding [Mr.] Gafni's role during the fundraising and enrollment process for leaders." Defendant Dinan also falsely claimed that Mr. Gafni was actually "call[ing] the shots behind the scenes" for the RiseUP film.

35. Defendant Dinan further claimed, again falsely, that Arianna Huffington "had not given authorization to [Success Summit] use her name" to promote Success Summit. Even after Defendants were contacted and advised that this was a false statement, they did not retract or correct their prior statements.

36. Defendant Dinan also falsely claimed that Success Summit had deceived the public by raising money for the RiseUP film as a non-profit "cause" and that Success Summit had manipulated the film's fundraising "to give the illusion of a big 'success' in online fundraising." Once again, even after Defendants were contacted and advised that this was a false statement, they did not retract or correct their prior statements.

37. Defendants made all of these and similar statements knowing that the statements were untrue or with a reckless disregard for their truth or falsity.

38. Defendant Dinan concluded by advising readers that the RiseUP film "does not

warrant your support on any level and will be damaging to be involved with in any way."

39.     Upon information and belief, Defendants' intent in making these statements was to interfere with Success Summit's business and to undermine efforts to complete, market and release its competitor's film.

40.     Following publication on the Huffington Post website, Defendant Dinan's May 3, 2016 article was also posted on various other websites that, upon information and belief, several of which are owned and/or operated by Defendants Dinan and The Shift Network and those working in concert with Defendants.

41.     On May 4, 2016, David Ingber also created an online petition that again incorporated false and defamatory statements about the RiseUP film and Success Summit, linked to the Huffington Post blog by Defendant Dinan, and urged third parties to boycott the RiseUP film.  Upon information and belief, Defendants Dinan and The Shift Network conspired with Mr. Ingber on the online petition.

42.     Beginning immediately after the article (and later the petition) was posted online, Defendants and/or others acting in concert with them began contacting individuals involved with the RiseUP film to pressure and intimidate them into withdrawing from the project and terminating any further work with Success Summit.

43.     As a direct result of Defendants' misconduct, a number of contributors and interviewees associated with Success Summit and the RiseUP film have withdrawn from participation in the film and Success Summit's other projects.  As a result, Success Summit has suffered significant damages and losses, has had its image tarnished, and has been precluded from

securing additional investment.

44. Additionally, because of Defendants' misconduct, Success Summit was forced to cancel a RiseUP event that had been scheduled, adding significantly to Success Summit's damages and losses.

45. Given Defendants' misconduct, Success Summit is also likely to suffer additional, significant damages, which threatens Success Summit's ability to proceed with its planned events and other business ventures.

### FIRST CLAIM FOR RELIEF
**(Intentional Interference with Contractual Obligations)**

46. Success Summit incorporates by reference the allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. Success Summit had valid contracts with numerous third parties in which those third parties had agreed, among other things, to contribute to and participate in the RiseUP film and other Success Summit events.

48. Defendants knew or reasonably should have known that Success Summit had these contracts with third parties.

49. Defendants, by words and conduct, intentionally caused the third parties to terminate or breach the contracts with Success Summit and/or interfered with the performance of the contract.

50. Defendants' interference with the contracts were improper, as alleged herein.

51. As a direct and proximate cause of Defendants' actions, Success Summit has been damaged in an amount to be determined but in excess of the jurisdiction of this Court.

## SECOND CLAIM FOR RELIEF
### (Intentional Interference with Prospective Business Relations)

52. Success Summit incorporates by reference the allegations set forth in paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. Success Summit was in the process of forming contracts with numerous third parties to, among other things, to contribute to and participate in the RiseUP film and other Success Summit events.

54. Defendants knew or reasonably should have known that Success Summit was seeking to form contracts with third parties.

55. Defendants, by words and conduct, intentionally interfered with the formation of agreements between these third parties and Success Summit by inducing or otherwise causing third parties not to enter into the prospective agreements and/or preventing Success Summit from acquiring or continuing the prospective agreement or relationship.

56. Defendants' interference with the contracts was improper, as alleged herein.

57. As a direct and proximate cause of Defendants' actions, Success Summit has been damaged in an amount to be determined but in excess of the jurisdiction of this Court.

## THIRD CLAIM FOR RELIEF
### (Defamation)

58. Success Summit incorporates by reference the allegations set forth in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Defendants have published and caused to be published false and defamatory statements about Success Summit and its film, RiseUP.

60. At the time of the publication of their false and defamatory statements about

Success Summit and its film, RiseUP, Defendants knew that their statements were false or acted with reckless disregard as to the truth or the falsity of their statements.

61. Defendants' false and defamatory statements have caused Success Summit actual and special damages in an amount to be determined but in excess of the jurisdiction of the Court.

## FOURTH CLAIM FOR RELIEF
### (Civil Conspiracy)

62. Success Summit incorporates by reference the allegations set forth in paragraphs 1 through 60 of this Complaint as if fully set forth herein.

63. Defendants and various third parties, including individuals identified above, agreed, by words and conduct, to engage in a campaign of false and defamatory statements and claims against Success Summit and the RiseUP film to damage Success Summit's business.

64. Defendants and/or others acting at their direction, request or with their agreement actually performed unlawful acts to interfere with and damage Success Summit's business.

65. As a direct and proximate cause of Defendants' actions, Success Summit has been damaged in an amount to be determined but in excess of the jurisdiction of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Success Summit, LLC, respectfully requests:

(a) An award of compensatory damages in an amount to be determined at trial but at least in excess of $75,000;

(b) Costs of suit;

(c) An Order requiring Defendants to make a public retraction of the false statements;

(d) An Order preliminarily and permanently enjoining Defendants, his and its employees, officers, directors, agents, servants, employees, attorneys, confederates, and any and all persons acting for, with, by through, or in concert with them or any of them from:

(i) making any false or defamatory statements about Success Summit, the RiseUP film or others directly involved in the development, marketing and distribution of the film; and

interfering in any manner with existing or prospective contractual relationships between Success Summit and any other party; and

(e) An award of such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 22, 2016                                        Respectfully submitted,

By: */s/ Jeffrey I. Abrams*_____
Jeffrey I. Abrams, Esq.
Nicholas A. Kurtz, Esq.
HARDER MIRELL & ABRAMS LLP
132 S. Rodeo Drive, Suite 301
Beverly Hills, California 90212
Tel. (424) 203-1600
JAbrams@HMAfirm.com
NKurtz@HMAfirm.com

By: */s/ Kimberly M. Hult*_____
Kimberly M. Hult

HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
Tel. (303) 442-6514
hult@hbcboulder.com

*Counsel for Plaintiff*